UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

STATE FARM FIRE AND CASUALTY COMPANY,

        Plaintiff,                    Case No. 18-13077

v                                            Honorable Thomas L. Ludington

ROBERT DELAND,
HOWARD LINDEN, as Next Friend of John Doe, a minor
JOHN DOE, a minor,
JOHN DOE 3

        Defendants.
_____/

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

On October 1, 2018, Plaintiff State Farm Fire and Casualty Company ("State Farm") filed a declaratory action against Defendants Robert DeLand, John Doe, and Howard Linden (as next friend of John Doe). ECF No. 1. On December 4, 2018, Plaintiff filed an amended complaint, adding John Doe 3 as a defendant. ECF No. 11. Plaintiff is currently defending DeLand in two state tort actions brought against DeLand by John Doe and John Doe 3 under a reservation of rights. DeLand was also the defendant in a criminal case arising from the same underlying facts as the two state tort actions.

Plaintiff seeks a declaratory action that it is not required to indemnify or defend DeLand in his civil suits involving John Doe and John Doe 3 ("Doe Defendants") pursuant to the Condominium Unitowners Policy ("Policy") that it issued to DeLand. *Id.* The action presents six counts: 1) that the injuries alleged by Doe Defendants are not "occurrences" as defined in the Policy; 2) neither Doe Defendants have alleged that DeLand's actions caused property damage; 3) the alleged injuries were expected or intended by DeLand or were the result of willful and malicious actions; 4) the alleged conduct is excluded by the Policy's business pursuits exclusion;

5) Doe Defendants' allegations should be construed as one occurrence under the Policy; and 6) the insurance provided by Plaintiff is in excess to all other available insurance for Doe Defendants. *Id.*

On April 19, 2019, Plaintiff filed a motion for summary judgment. ECF No. 24.

## I.

### A.

The Policy provides in relevant part to the immediate motion:

SECTION II- LIABILITY COVERAGES

COVERAGE L - PERSONAL LIABILITY

If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage to which this coverage applies, caused by an occurrence, we will:

1. pay up to our limit of liability for the damages for which the insured is legally liable; and

2. provide a defense at our expense by counsel of our choice. We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend any claim or suit ends when the amount we pay for damages, to effect settlement or satisfy a judgment resulting from the occurrence, equals our limit of liability.

COVERAGE M - MEDICAL PAYMENTS TO OTHERS

We will pay the necessary medical expenses incurred or medically ascertained within three years from the date of an accident causing bodily injury. Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital. Professional nursing, prosthetic devices and funeral services. This coverage applies only:

1. to a person on the insured location with the permission of an insured . . .

2. to a person off the insured location, if the bodily injury:

    a. arises out of a condition on the insured location or the ways immediately adjoining;

    b. is caused by the activities of an insured . . .

Condominium Unitowners Policy at 15, ECF No. 11-1.

In Count I, Plaintiff contends that it has "no duty to defend or indemnify Rev. Deland under the Policy, as his claimed conduct does not constitute an occurrence under the policy." ECF No. 11 at 6. The Policy defines "occurrence" as:

> "occurrence," when used in Section II of this policy, means an accident, including exposure to conditions, which results in:
>
> a. bodily injury; or
>
> b. property damage;
>
> during the policy period. All bodily injury and property damage resulting from one accident, series of related accidents or from continuous and repeated exposure to the same general conditions is considered to be one occurrence.

ECF No. 11-1 at PageID.151–152.

In Count II, Plaintiff contends that it has no duty to indemnify DeLand under the Policy because the John Does have not alleged that DeLand's conduct "physically damaged or destroyed [their] tangible property, or caused him to lose the use of any tangible property." ECF No. 11 at 8–9. The Policy states that "'property damage' means physical damages to or destruction of tangible property, including loss of use of this property. Theft or conversion of property by any insured is not property damage." *Id.*

In Count III, Plaintiff contends that "any bodily injuries or property damages that John Doe or John Doe 3 sustained are barred by the policy's intended or expected acts exclusions." The Policy provides:

> SECTION II – EXCLUSIONS
>
> 1. Coverage L and Coverage M do not apply to:
>
> a. bodily injury or property damage:
>
> (1) which is either expected or intended by the insured; or

    (2) which is the result of willful and malicious acts of the insured.

*Id.* at 10.

  In Count IV, Plaintiff contends that "any bodily injuries or property damages that John Doe or John Doe 3 sustained are barred by the policy's business pursuits exclusions." The Policy defines "business" as "a trade, profession or occupation. This includes farming." *Id.* The Policy also lists the following exclusions:

SECTION II - EXCLUSIONS

 1. Coverage L and Coverage M do not apply to:

* * *

  b. bodily injury or property damage arising out of business pursuits of any insured or the rental or holding for rental of any part of any premises by any insured. This exclusion does not apply:

    (1) to activities which are ordinarily incident to nonbusiness pursuits;…

*Id.*

  In Count V, Plaintiff contends that though John Doe and John Doe 3's complaints allege that DeLand groomed them over a period of months, the allegations must be considered just one occurrence under the Policy. The Policy states that "all bodily injury and property damage resulting from one accident, series of related accidents or from continuous and repeated exposure to the same general conditions is considered to be one occurrence." It further provides:

SECTION II—CONDITIONS

 1. Limit of Liability. The Coverage L limit is shown in the Declarations. This is our limit for all damages from each occurrence regardless of the number of insureds, claims made or persons injured.

  The Coverage M limit is shown in the Declarations. This is our limit for all medical expense for bodily injury to one person as the result of one accident.

*Id.*

In Count VI, Plaintiff alleges that its liability is "limited by the policy's other insurance provision." The Policy provides:

> Other Insurance – Coverage L. This insurance is excess over any other valid and collectible insurance, subject to the following:
>
> a. When like insurance is written in another company, we shall not be liable under this policy for a greater portion of any loss than the applicable limit of liability stated in the Declarations bears to the total applicable limit of all valid and collectible insurance against such loss.
>
> b. This insurance is not excess over other insurance written specifically to cover as excess over the limits of liability that apply in this policy.

*Id.*

**B.**

On March 20, 2018, Howard Linden, as next friend of John Doe, filed a complaint in the Circuit Court for the County of Saginaw against DeLand, the Catholic Diocese of Saginaw, and Bishop Joseph Cistone. Linden Complaint, ECF No. 11-2. John Doe alleged that DeLand "engaged in a systematic pattern of 'grooming' behavior toward John Doe, targeting the minor child, gaining his trust, and/or providing him with gifts and favors." *Id.* at 3. He claimed that while at DeLand's condominium on February 25, 2018, DeLand "inappropriately, grop[ed] and fondl[ed] [Doe's] crotch and buttocks, feet and toes." *Id.* at 4. In the first count of his complaint, he alleged that DeLand's actions "amounted to assault and battery." *Id.* at 6. In the second count of his complaint, he alleged that DeLand's actions "amounted to negligence, gross negligence, and/or willful and wanton misconduct." *Id.* He claimed that he suffered injuries and damages that included reasonable medical expenses, physical pain and suffering, mental anguish, and emotional depression. *Id.* at 5.

On September 18, 2018, John Doe 3 filed a complaint in the Circuit Court for the County of Saginaw against DeLand, the Catholic Diocese of Saginaw, and Bishop Joseph Cistone. John Doe 3 Complaint, ECF No. 11-3. John Doe 3 claimed that DeLand engaged in a pattern of

"grooming" behavior towards him and that in August 2017, DeLand sexually assaulted him. *Id.* at 3. In the first count of his complaint, he alleged that DeLand's actions "amounted to assault and battery." *Id.* at 5. In the second count of his complaint, he alleged that Deland's actions "amounted to negligence, gross negligence, and/or willful and wanton misconduct." *Id.* He claimed to have suffered injuries and damages that included reasonable medical expenses, physical pain and suffering, mental anguish, and emotional depression. *Id.* at 4.

## C.

DeLand requested that Plaintiff, pursuant to the Policy, defend him in the civil lawsuits brought against him by John Doe and John Doe 3. ECF No. 11 at 5. Plaintiff is currently defending DeLand in these lawsuits, but it seeks a declaratory judgment that it is not required to do so under the Policy. *Id.* at 6.

Plaintiff has named not only DeLand as a defendant to the declaratory judgment, but also John Doe and John Doe 3. This is notable because neither John Doe nor John Doe 3 are parties to the insurance policy between State Farm and DeLand. They are solely claimants against DeLand in two separate legal actions. However, as injured parties, they have an independent interest in the insurance policy. In *Cloud v. Vance*, an insurance company brought a declaratory judgment action against the insured. *Cloud v. Vance*, 296 N.W.2d 68 (Mich. Ct. App. 1980). It was determined that that the insurance company was not liable to the insured under the policy and the court granted the insurance company the declaratory judgment. The injured party later brought suit against the insurance company. It argued that the insurance company had not provided it with notice of the declaratory judgment action despite the fact that the injured party had an independent interest in the action. The Michigan Court of Appeals determined that

> We note that defendant insurance company had every right to litigate the coverage issue between it and its insured in the declaratory judgment action. However, under

the circumstances of this case, we do not permit defendant insurance company to defeat a possible, known claim against it by plaintiff in a declaratory judgment action processed without either notice to plaintiff or an opportunity to plaintiff to intervene and be heard.

*Id.* at 70 (affirmed by *Allstate Insurance Company v. Hayes*, 499 N.W.2d 743, 748 (Mich. 1993)) ("[T]he injured party in an insurer's action for declaratory judgment is a proper party to that action."). Accordingly, Doe Defendants have been properly named as parties to Plaintiff's declaratory judgment action.

### D.

John Doe and John Doe 3 both allege that DeLand's conduct was intentional and constituted an assault and battery. They also allege, in the alternative, that if not intentional that it was negligent. The allegations are inconsistent because proof of an assault and battery requires proof of an element of intent. A claim for negligence does not. However, a party may plead in the alternative as John Doe and John Doe 3 have done. Michigan law provides

> (2) Inconsistent claims or defenses are not objectionable. A party may
>
>   (a) allege two or more statements of fact in the alternative when in doubt about which of the statements is true;
>
>   (b) state as many separate claims or defenses as the party has, regardless of consistency and whether they are based on legal or equitable grounds or on both.

MI Rules MCR 2.111.

### II.

### A.

Plaintiff has now filed a motion for summary judgment. A motion for summary judgment should be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has

the initial burden of identifying where to look in the record for evidence "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party who must set out specific facts showing "a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted). The Court must view the evidence and draw all reasonable inferences in favor of the non-movant and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

**B.**

If so agreed in an insurance policy, an insurance company has a duty to defend the insured. The Michigan Court of Appeals has held that

> The duty of the insurer to defend the insured depends upon the allegations in the complaint of the third party in his or her action against the insured. This duty is not limited to meritorious suits and may even extend to actions which are groundless, false, or fraudulent, so long as the allegations against the insured even arguably come within the policy coverage. An insurer has a duty to defend, despite theories of liability asserted against any insured which are not covered under the policy, if there are any theories of recovery that fall within the policy. The duty to defend cannot be limited by the precise language of the pleadings. The insurer has the duty to look behind the third party's allegations to analyze whether coverage is possible. In a case of doubt as to whether or not the complaint against the insured alleges a liability of the insurer under the policy, the doubt must be resolved in the insured's favor.

*Detroit Edison Co. v. Michigan Mut. Ins. Co.*, 301 N.W.2d 832, 835 (Mich. Ct. App. 1981).

A court must perform a two-part test when determining whether an insurance policy covers a particular act. *Heniser v. Frankenmuth Mut. Ins. Co.*, 534 N.W.2d 502, 510 (Mich. 1995). First, it must determine whether the policy provides coverage to the insured. If the policy does provide coverage, the court must then determine whether that coverage is negated by an exclusion. In performing this analysis, "it is the insured's burden to establish that his claim falls within the terms

of the policy." *Id.* DeLand, the insured, has not met this burden. Nor has John Doe or John Doe 3. Accordingly, Plaintiff's motion will be granted.

## III.

Plaintiff contends that "pursuant to the policy, in order for an insured to be entitled to a defense and/or indemnification, the acts complained of must be accidental, as 'occurrence' is defined in the policy, in pertinent part, as an 'accident.'" ECF No. 24 at PageID.338. The policy defines "occurrence" as follows

[A]n accident, including exposure to conditions, which results in:

a. bodily injury; or

b. property damage;

during the policy period. All bodily injury and property damage resulting from one accident, series of related accidents or from continuous and repeated exposure to the same general conditions is considered to be one occurrence.

ECF No. 11-1 at PageID.151–152.

When interpreting the terms of an insurance policy, the court is to use the "commonly used meaning" of the terms. *Frankenmuth Mut. Ins. Co. v. Masters*, 595 N.W.2d 832, 837 (Mich. 1999). In cases of insurance liability, the Michigan Court of Appeals has defined the term "accident" as

[A]nything that begins to be, that happens, or that is a result which is not anticipated and is unforeseen and unexpected by the person injured or affected thereby—that is, takes place without the insured's foresight or expectation and without design or intentional causation on his part. In other words, an accident is an undesigned contingency, a casualty, a happening by chance, something out of the usual course of things, unusual, fortuitous, not anticipated, and not naturally to be expected.'

*Hawkeye-Security Ins. Co. v. Vector Const. Co.* 185 Mich. App. 369, 374 (Mich. 1990) (quotations omitted). Furthermore, "the definition of accident should be framed from the standpoint of the insured, not the injured party." *Frankenmuth Mut. Ins. Co.*, 595 N.W.2d at 837. "[I]f both the act

and the consequences were intended by the insured, the act does not constitute an accident." *Allstate Insurance Co. v. McCarn*, 645 N.W.2d 20, 23 (Mich. 2002).

Michigan law does not require the insured to have intended to cause the injury. Instead, it is sufficient that the insured intended to perform the act that caused the injury. *See Nabozny v. Burkhardt*, 606 N.W.2d 639, 642-643 ("[W]hen an insured's intentional actions create a direct risk of harm, there can be no liability coverage for *any* result damage or injury, despite the lack of an actual intent to damage or injure.") (quoting *Frankenmuth Mut. Ins. Co.*, 595 N.W.2d at 832). Chief Justice Cavanaugh presented an example of this in *Frankenmuth Mut. Ins. Co. v. Piccard*. It provides

> A hypothetical example may help to clarify what I believe to be the substance of the quoted language. Suppose the fire had been started by a faulty electric cord on the insured's coffeemaker. Examining the insured's act for "intent," there is no doubt that he purposely plugged in the coffeemaker and turned on the switch. In that sense he acted intentionally. The fire remains an accident and the act constitutes an occurrence, however, because at the time of the insured's purposeful act he had no intent to cause harm. The act of plugging in the coffeepot is not a sufficiently direct cause of the harm, and the fire in this example is an accident.

*Frankenmuth Mut. Ins. Co. v. Piccard*, 489 N.W.2d 422, 430 (Mich. 1992).

**1.**

Plaintiff argues that DeLand's actions do not constitute an "occurrence" because they were performed with intent rather than being accidental. It quotes John Doe and John Doe 3's allegations and argues that both allege intentional conduct on the part of DeLand. John Doe's complaint provides:

> DELAND engaged in a sytematic [sic] pattern of "grooming" behavior toward JOHN DOE, targeting the minor child, gaining his trust, and/or providing him with gifts and favors.
>
> DELAND began to remove JOHN DOE from class, taking him to an isolated area of the school to talk, contact which made JOHN DOE late to classes on a daily basis.

> DELAND encouraged illegal and/or dangerous behavior, often speaking to JOHN DOE about getting drunk and high.
>
> DELAND inquired as to the financial situation of JOHN DOE's parents, then gave him gifts of cash and purchased an expensive "vape" machine for the minor child. DELAND also made inappropriate physical contact with JOHN DOE during the school day, including back rubs, hugs, and groping of the buttocks.
>
> On or about October 26, 2017, DELAND asked JOHN DOE to come to his home to watch his dog, where he then forced JOHN DOE to smoke cigarettes with him.

ECF No. 11-2 at PageID.187 (numerals omitted). John Doe 3's complaint provides:

> In the summer of 2017, Defendant DELAND and three other persons from DELAND's church walked into the Saginaw restaurant where Plaintiff was working.
>
> After being introduced to Plaintiff, Defendant DELAND took an immediate interest in Plaintiff. While seated at the dinner table and in the presence of church going guests, Defendant DELAND engaged in several friendly conversations with Plaintiff.
>
> After leaving the restaurant, Defendant DELAND re-appeared a couple hours later, alone, to pick up a "to-go" order.
>
> Defendant DELAND used this solo appearance as an opportunity to continue his discussions with Plaintiff. Defendant DELAND learned that Plaintiff was in the foster care system since the age of nine years old, and represented that he wanted to help out the young adult Plaintiff, to whom he provided his telephone number.
>
> Defendant DELAND proceeded to engage in a systematic pattern of "grooming" behavior toward JOHN DOE 3, targeting the Plaintiff and gaining his trust by providing him favors which included employment opportunities with the church including helping out with church cookouts and doing maintenance and repair work at DELAND's church provided condo.
>
> In August of 2017, Defendant DELAND sexually assaulted Plaintiff JOHN DOE 3, the details of which are described in JOHN DOE 3's testimony provided at the preliminary exam on April 25 and/or April 27, 2018.

ECF No. 11-3 at PageID.200 (numerals omitted). Plaintiff contends that the factual allegations against DeLand are all intentional actions, preventing them from being construed as accidental and constituting an "occurrence." ECF No. 24 at PageID.338-340.

DeLand concedes that the theories of assault and battery and the theories of willful and wanton misconduct in Doe Defendants' complaints are not theories covered by the Policy. ECF No. 27 at PageID.519. However, he argues that the negligence theories in the complaints are covered by the Policy. DeLand contends that he may have been negligent in his actions because Doe Defendants were both legally old enough to consent to sexual activity.

The allegations of negligence do not qualify as an "occurrence" under the Policy. The Michigan Court of Appeals has held that "mere allegations of negligence in a transparent attempt to trigger insurance coverage by characterizing intentionally tortious conduct as negligent will not persuade the court to impose a duty to defend." *Iowa Kemper Ins. Co. v. Ryan*, 431 N.W.2d 434, 436 (1988). As explained above, an occurrence must involve an accident. Under the "commonly used meaning" of the term accident, an individual's mistaken belief regarding another individual's mindset is not accidental.

DeLand is not contending (nor do Doe Defendants' complaints allege) that DeLand accidentally "made inappropriate physical contact" or accidentally "sexually assaulted" Doe Defendants. DeLand may have been mistaken regarding Doe Defendants' consent or lack thereof, but there is no allegation in Doe Defendants' complaints that DeLand's physical advances upon Doe Defendants was accidental in any way. DeLand's potential negligence in mistaking Doe Defendants' consent does not constitute an accident because his intentional actions towards Doe Defendants "create[d] a direct risk of harm." *Nabozny*, 606 N.W.2d at 643.

This finding is consistent with the Michigan Court of Appeals in *Auto Club Group Ins. Co. v. Ramos*. In that case, the 56-year-old insured defendant was alleged to have sexually assaulted his 34-year-old niece. *Auto Club Group Ins. Co. v. Ramos*, 2011 WL 2586156 (Mich. Ct. App. June 30, 2011). The insured defendant's insurance company filed a declaratory judgment and the

court held that the insured defendant's actions did not constitute an accident as defined in his insurance policy.

> Based on the clear, unambiguous language of the policy, defendant's conduct cannot be characterized as an accident. An accident, pursuant to this particular policy, is "a fortuitous event or chance happening…" Defendant's conduct was not fortuitous or by chance. He deliberately engaged in the conduct in which he engaged. While he might not have intended for it to be for sexual gratification or to cause harm to [his niece], his intention is irrelevant for purposes of this policy language.

*Id.* at *5. So too here. Regardless of DeLand's intent, his alleged conduct was not fortuitous or by chance and therefore, not accidental.

**2.**

In their response to Plaintiff's motion for summary judgment, Doe Defendants argue that DeLand's conduct falls within the scope of the Policy because the "definition of 'occurrence' in the relevant policy is ambiguous" and therefore, should be construed in favor of the insured. ECF No. 26 at PageID.475. Doe Defendants cite to the Policy provision defining "occurrence" and allege that it is ambiguous. It provides

> "occurrence,"…means an accident, including exposure to conditions, which results in:
>
> a. bodily injury; or
>
> b. property damage;
>
> during the policy period. All bodily injury and property damage resulting from one accident, series of related accidents <u>or from continuous and repeated exposure to the same general conditions is considered to be one occurrence</u>.

ECF No. 26 at PageID.474 (emphasis in Doe Defendants' response brief). Doe Defendants contend that "[t]his portion of the policy is ambiguous because it can be read to mean that an 'occurrence' can result from one accident, a series of related accidents, *OR from continuous and repeated exposure to the same general conditions.*" *Id.* (emphasis in original). Doe Defendants contend that

"DeLand's 'grooming' was, as defined in the policy, a continuous and repeated exposure to the same general conditions." *Id.* at PageID.474-475.

However, Doe Defendants' response does not address an integral aspect of the policy provision, specifically the requirement that it be an accident. Doe Defendants are arguing that exposure to the same general conditions can qualify as an occurrence under the Policy. However, this is contrary to the plain meaning of the policy and the term "accident." *See Frankenmuth Mut. Ins. Co. v. Masters* 460 Mich. 105, 112-114 (1999) ("[T]his Court will interpret the terms of an insurance contract in accordance with their 'commonly used meaning'…In recent times, there has been controversy over interpreting the term 'accident' in cases such as the instant case, particularly where it is not defined in the insurance policy. When the meaning of a term is not obvious from the policy language, the 'commonly used meaning' controls.") (citations omitted). The term "exposure to the same general condition" simply provides additional explanation for what qualifies as an occurrence. However, the exposure must qualify as an accident in the first instance to be considered an "occurrence" under the Policy. An accident by its very nature lacks intent. In this case, DeLand's alleged actions were intentional. Accordingly, they do not qualify as an occurrence under the Policy.

## IV.

Plaintiff also argues that the Policy's intentional acts exception and business pursuits exception apply. These arguments will not be addressed since Defendants have not demonstrated that DeLand's actions qualified as an occurrence under the Policy. *Heniser v. Frankenmuth Mut. Ins. Co.*, 534 N.W.2d 502, 510 (Mich. 1995) ("[I]t is the insured's burden to establish that his claim falls within the terms of the policy."). Pursuant to the two-step test, it is unnecessary to determine whether the Policy's exceptions apply. *See id.* (explaining that a court must first

determine whether the policy provides coverage to the insured and if so, then the court must determine whether that coverage is negated by an exclusion.).

**V.**

Accordingly, it is **ORDERED** that Plaintiff's motion for summary judgment, ECF No. 24, is **GRANTED**.

It is further **ORDERED** that Plaintiff is not required to continue defending, and that it does not have a duty to indemnify, Robert DeLand against the allegations brought against him by Howard Linden, as next friend of John Doe, a minor, in the Saginaw County Circuit Court, under Case No. 18-035911-NO.

It is further **ORDERED** that Plaintiff is not required to continue defending, and that it does not have a duty to indemnify, Robert DeLand against the allegations brought against him by John Doe 3 in the Saginaw County Circuit Court, under Case No. 18-037497-NO-1.

Dated: June 20, 2019                    s/Thomas L. Ludington
                                        THOMAS L. LUDINGTON
                                        United States District Judge